# EXHIBIT 2

**Briton Sparkman**

| | |
|---|---|
| **Subject:** | FW: GJ Subpoena re: M/V Marguerita |
| **Attachments:** | Reederei subpoena.pdf; Mineralien subpoena.pdf |

**From:** Waller, Shane (ENRD) [mailto:Shane.Waller@usdoj.gov]
**Sent:** Thursday, August 03, 2017 10:02 AM
**To:** 'George M. Chalos'
**Cc:** Chapman, Jon (USAME); Cashman, John (ENRD)
**Subject:** GJ Subpoena re: M/V Marguerita

Mr. Chalos,

Please find attached grand jury subpoenas requesting the production of documents from your clients MST Mineralien Schiffahrt Spedition und Transport GmbH, and Reederei MS Marguerita GmbH & Co. Geschlossene Investment-KG.

We would ask that you provide these documents forthwith as we are attempting to conclude the pending investigation as soon as possible.

Cordially,
Shane Waller
Trial Attorney
U.S. Department of Justice – Environmental Crimes Section

 Virus-free. www.avg.com

2017R00205 - 003

AO 110  (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT
### for the

District of Maine

## SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:  Reederei MS Marguerita GmbH & Co.
Geschlossene Investment-KG

**YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place: Portland Grand Jury<br>Edward T. Gignoux Federal Courthouse, 156 Federal Street, Portland, ME 04101 | Date and Time:<br><br>August 8, 2017 |
|---|---|

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable):*
See Attachment

Date:  August 1, 2017

CLERK OF COURT

Christa K. Berry

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the United States attorney, or assistant United States attorney, who requests this subpoena, are:

Shane Waller
100 Middle Street  East Tower, 6th Floor  Portland,  ME  04101
2077803257
shan.waller@usdoj.gov

2017R00205 - 003

AO 110  (Rev. 06/09)  Subpoena to Testify Before Grand Jury (Page 2)

## PROOF OF SERVICE

This subpoena for *(name of individual or organization)*   Reederei MS Marguerita GmbH & Co.

was received by me on *(date)* _____.

☐   I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐   I returned the subpoena unexecuted because: _____

_____.

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

2017R00205 - 003

# CERTIFICATE OF AUTHENTICITY
## OF BUSINESS RECORDS
### (Pursuant to Federal Rules of Evidence 803(6) and 902(11))

I, _____, am employed by/associated with
 (Please print)

_____. My official title is _____.
 (organization)                                                    (Please print)

By reason of my position I am familiar with how _____
                                                                    (organization)

maintains records relating to its regularly conducted business activity, and I am authorized and

qualified to make this declaration.

     I further certify that the attached records are originals or true copies of records which:

(A)    Were made at or near the time of the occurrence of the matters set forth in the
records by a person with knowledge of those matters, or from information
transmitted by a person with knowledge of those matters;

(B)    Were kept in the course of regularly conducted business activity;

(C)    Were made by the said business activity as a regular practice; and

(D)    If not original records, are duplicates of original records.

     I declare under penalty of criminal punishment for perjury and false statement that the

foregoing is true and correct.

Executed on _____      _____
 Date                                                       Signature

                                        _____
 Printed Name

# ATTACHMENT A

For subpoena duces tecum dated August 2, 2017

I.  Instructions

This subpoena requires that you appear before the Grand Jury at the time and place specified and produce to the Grand Jury all documents described herein.

The documents required to be produced under this subpoena include all documents in the possession, custody or control of Reederei MS Marguerita GmbH & Co. Geschlossene Investment-KG (Reederei), wherever located, including documents in the possession, custody or control of Reederei's directors, officers, employees, representatives or agents (which includes contractors, subcontractors, and consultants).  Without limitation on the term "control", a document is deemed to be in the "control" of Reederi, if you and/or any officer, director, employee or agent have the right to secure that document or a copy thereof from another.

All documents that respond, in whole or in part, to any part or clause or any paragraph of this subpoena shall be produced in their entirety, including all attachments and enclosures.  All documents that are attached to documents called for by this subpoena shall be produced, even if they are not otherwise responsive to the subpoena.

All documents produced shall be accompanied by an index listing the document by number, identifying the natural person and office location from which the document was obtained, and the paragraph of this subpoena to which each document is responsive.

Each page of all documents shall be numbered consecutively, beginning with 0000001 and continuing through the total number of pages submitted.  These markings should be placed at the lower right-hand corner of each page, but should not be placed so as to obscure any information on the document.

Any document demanded by the subpoena that is withheld on a claim of privilege must be preserved.  If the document contains privileged material, produce the entire document with the privileged material redacted.  For any document or any portion of a document withheld under a claim of privilege submit a sworn or certified statement from your counsel or one of your employees in which you identify the document by author(s), addressee(s), date, number of pages, current location, and subject matter.  Specify the nature and basis of the claimed privilege, and identify the paragraph of this subpoena to which the privileged document is responsive.  Also specify each person to whom the document or its contents, or any part thereof, has ever been disclosed.

No agreement by the Department of Justice or any of its representatives purporting to modify, limit, or otherwise vary this subpoena shall be valid or binding on the Department of Justice unless confirmed or acknowledged in writing (or made of record in court) by a duly authorized representative.

II. Definitions

As used herein, the term **"documents"** means and includes all form and manner of records and documents, including, but not limited to: contracts, agreements, letters, emails, daily logs, calendars, schedules, pamphlets, newsletters, flyers, inventory records, affidavits, statements, depositions, contracts, correspondence, memoranda, notes, purchase orders, log books, charts, tabulations, drawings, blueprints, wire diagrams, piping diagrams, compilations, studies, analyses, field tests, estimates, laboratory analyses, reports, vouchers, transfer records, shipping documents, packing lists, bills of lading, invoices, billing records, batch records, payment receipts, canceled checks, records of wire transfers and bank statements, quality assurance/quality control records, company brochures, manuals, vendor profiles, correspondence files, sales files and records, telefaxes, telephone logs and records, records or minutes of meetings, notes, messages, journals, process or procedure manuals, training records, manifests, inventories, tickets, lists, training manuals, operating instructions, workshop material, photographs, videos, voicemails, etc., as well as computer, email, and other electronic information, disks, data, etc. Any electronically stored document is to be produced in reasonably usable form, along with instructions for reading the data. The term "document" also includes the original (or a copy thereof if the original is not available) and all copies that differ in any respect from the original or that bear any notation, marking, or information not on the original.

As used herein, the terms "**relating to**" and "**regarding**" mean constitute, define, contain, embody, reflect, identify, state, refer to, deal with, or in any way pertain to. As used herein, "**including**" is a term of inclusion that means including but not limited to; "including" is never a term that excludes items not specifically listed.

As used herein, the terms "**and**" and "**or**" are terms of inclusion and not of exclusion, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this schedule any document or information that might otherwise be construed to be outside its scope.

The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa.

As used herein, the term "**analysis**" means study, collection of data or information, examine, consider, contemplate, and/or literature review, whether complete, incomplete, or started but halted for any reason.

As used herein, the name M/V MARGUERITA shall at all times mean the vessel having IMO #9717515 to include such times as it was registered under a different vessel name.

III. Documents to be Produced

1) Since January 1, 2016, any and all documents relating to engine room and machinery space operations on the M/V MARGUERITA, including but not limited to: engine room logs; sounding logs; daily sounding reports; daily Fuel & Water Reports; engineering checklists; Oil Record Books; International Oil Pollution Prevention (IOPP) certificates and attachments; alarm print outs/electronic alarm logs; daily diaries; engineering logs; deck logs; rough logs; maintenance logs; preventative maintenance system reports; piping diagrams; daily work assignments; work completion and/or work done logs; engineer's notes and rough drafts of other engineering records created by crew members of the M/V MARGUERITA, and/or documents reflecting policies and procedures for conduct of operations in the engine room.

2) Any and all documents relating to compliance with United States environmental laws (including the Act to Prevent Pollution from Ships and any Coast Guard regulations), or the MARPOL Protocol, including the discharge of bilge water, oily bilge waste, slops, sludge, garbage, or other pollutants.

3) Since January 1, 2016, any and all documents relating to construction, repairs, modification and replacement for all engine room and machinery space piping, vents, tanks, and pumps.

4) Any and all documents relating to an onboard waste-oil incinerator including when such incinerator was installed on the vessel and all documents containing information as to the maintenance and operation of the incinerator.

5) Since January 1, 2016, all documents (including communications between the M/V MARGUERITA and/or its Engine Room crew members and/or master, and any shore-based personnel of REEDERI) regarding the storage, treatment, handling, processing, and disposal of machinery space bilge water, sludge, and/or other oily wastes, on the M/V MARGUERITA, including but not limited to the use, operation, assessment, maintenance, and repair of the main engine, the Oil Water Separator, Oil Content Meter, and all records related to the M/V MARGUERITA discharging oily waste.

6) Since January 1, 2016, all documents (including communications between the M/V MARGUERITA and/or its Engine Room crew members and/or master, and any shore-based personnel of REEDERI) regarding the storage, treatment, handling, processing, and disposal of ballast water, ballast, grey water, sewage (black water), garbage and/or other wastes on the M/V MARGUERITA, including but not limited to the filling, transfer and discharge of any ballast tank, boiler fresh water tank, boiler feed water tank, any void tank or other tank or void space in which liquid was retained.

7) Since January 1, 2016, all maintenance, upgrades, adjustments, replacement, and repair documents (including spare parts records) relating to the main engine, Oil Water Separator, Oil Content Monitor, and/or incinerator on the M/V MARGUERITA. This

request includes but is not limited to all requisition forms, order forms, and invoices including documents related to the inventory and ordering of filters, membranes, cleaners and other consumable items necessary for the operation of the Oil Water Separator.

8)   Since January 1, 2016, all documents, including vendor, surveyor, flag state representative and classification society reports related to operational tests and/or examinations performed on the Oil Water Separator, Oil Content Meter, Oil Content Monitor or probes, and/or incinerator of the M/V MARGUERITA, by REEDERI, or others.  This information should include the calibration certificate(s) for the BilgMon 488 OCM including identification of the LCD unit assembly and measuring cell unit assembly.

9)   Since January 1, 2016, all documents relating to malfunctions, alarms or failures of the Oil Water Separator, Oil Content Monitor, and the pumps associated with the OWS system on the M/V MARGUERITA.

10)   Since January 1, 2016, all transition and turnover notes between Chief Engineers on the M/V MARGUERITA.

11)   Since January 1, 2016, all transition and turnover notes between vessel Masters on the M/V MARGUERITA.

12)   Since January 1, 2016, all transition and turnover notes of the First, Second, and Third Assistant Engineers on the M/V MARGUERITA.

13)   Since January 1, 2016, all vessel superintendent and port engineer trip reports and memoranda related to the M/V MARGUERITA.

14)   Since January 1, 2016, all audit reports, including Safety Management System and Classification Society audits, for the M/V MARGUERITA.

15)   For all Masters, Chief Mates, Chief Engineers and all crewmembers serving in the engine department of the M/V MARGUERITA since January 1, 2016, the personnel files, including documents relating to time served on the M/V MARGUERITA and related ships, contracts, pre-boarding documents, boarding documents, departure documents, termination records, performance evaluations, disciplinary actions, records relating to environmental and/or MARPOL training by the ship owner, operator, and/or any third party, and any certificates or licenses.

16)   Since January 1, 2016, all instructions, guidance, procedures, company policies, and training materials provided to the M/V MARGUERITA crew including the Masters and Chief Engineers regarding the maintenance of the Garbage Record, Oil Record Book, Sounding Log(s), daily sounding procedures, and compliance with United States environmental laws (including the Act to Prevent Pollution from Ships and any Coast Guard regulations), or the MARPOL Protocol, and the discharge of garbage, ballast

water, bilge water, oily bilge waste, tank waste, slops, sludge, grey water, sewage, or other pollutants.

17)   Since January 1, 2016, all documents relating to the disposal or discharge of waste oil (of any kind, including bilge water and sludge).  The documents produced should include all records showing the date, time, location, volume, equipment used, type of hose connections used, costs of all waste oil removal, transfer, treatment, recycling, or disposal, and the identity and location of the employees, contractors or vendors providing this service.

18)   Any and all documents related to any analysis of the Oil Content Meter/Monitor alarms from the M/V MARGUERITA from January 1, 2016, to the present.

19)   With regard to the M/V MARGUERITA, any and all budget requests including all specific requests for expenditures by employees including the Chief Engineer, Master, port engineer or superintendent from January 1, 2016, to the present.

20)   Any and all documents, including summaries or charts, relating to the gross and net profits, pre-tax profits, chartering fees, and expenses of the M/V MARGUERITA, from January 1, 2016, to the present.

21)   Any and all documents, including summaries or charts, relating to the gross and net profits, and costs of REEDERI, its subsidiaries, partnerships, and related corporate interests from January 1, 2016, to the present.

22)   Any and all charter contracts or other contracts or agreements relating to the operation, management and oversight of the M/V MARGUERITA, from January 1, 2016, to the present including all documents concerning manning and crewing as well as the Charter Party contract(s) with Manuela Shipping ltd of Monrovia, Liberia.

23)   Any and all documents identifying all owners of REEDERI, including the percent of ownership, the names of all officers of REEDERI, including the title and compensation of each, or, in lieu thereof, a duly authorized corporate statement providing this information.

24)   Such documents as will show all other entities related to REEDERI having any common ownership, any common officers, any common management, common address, and/or common personnel with REEDERI, including the ownership of each such entity, or in lieu thereof, a duly authorized corporate statement providing this information.

25)   All documents that identify those persons or businesses having an ownership interest or operating interest in the M/V MARGUERITA including the amount of that interest, or, in lieu thereof, a certified statement of a duly authorized corporate officer providing this information.

26) Such documents as will show all vessels owned (in whole or in part), operated, chartered or technically managed by REEDERI.

27) Copies of all contracts and management agreements with or between REEDERI, and owners, operators, charterers and technical managers of the M/V MARGUERITA including any agreements, contracts and correspondence between any manning or crewing agency and REEDERI that govern, affect, or involve manning or crewing.

28) Certificate and Articles of Incorporation for REEDERI.

29) Since January 1, 2016, the following budget related records:

    (a)    all documents relating to the budget for each vessel owned, operated or chartered by REEDERI, including all proposed budgets and the final budget;

    (b)    all documents, including any periodic reports relating to the amount of money budgeted for the maintenance, storage, treatment and disposal of machinery space bilge water, sludge, and garbage on each vessel owned, operated or managed by REEDERI; and

    (c)    all board resolutions and meeting minutes.

30) For the last two years, copies of all certificates of financial responsibility (COFR) and continuous synopsis records for the M/V MARGUERITA.

31) Copy of ISM certificate showing the company and designated person responsible for the M/V MARGUERITA.

32) Since January 1, 2016, all documents related to the building, builder's trial(s), sea trial(s), delivery, warranty repairs and any other repairs of the M/V MARGUERITA.

33) Since January 1, 2016, any and all reports made from crewmembers on the M/V MARGUERITA to REEDERI (including communications to officers, management, helplines, and/or hotlines for concerns) and to safety or environmental compliance helplines and hotlines contracted or retained by REEDERI regarding the management of machinery space bilge water, oily waste, ballast water, sludge, or garbage on the M/V MARGUERITA.

34) Since January 1, 2016, all documents related to environmental compliance plans, environmental compliance programs, and compliance reporting procedures, including confidential reporting options, third-party notifications, and whistleblower provisions, for all vessels owned, operated, managed, chartered, or otherwise under the control of REEDERI.

35)  Since January 1, 2016, all documents related to any Port State Control detention of any vessels owned, operated, managed, chartered or otherwise under the control of REEDERI.

36)  Since January 1, 2016, all documents related to the Vessel General Permit (VGP) application and approval for the M/V MARGUERITA including any documents involving the Environmental Protection Agency pertaining to ballast, ballast water, wastewater, and operational discharges, including all notifications and reports submitted in accordance with the VGP.

37)  Since January 1, 2016, all documents, including orders, invoices, receipts, and correspondence, with any of the following companies:

a)  Coast Environmental Ltd, Victoria, BC, Canada
b)  Interport Shipwaste Solutions Inc., North Vancouver, BC, Canada
c)  Atlantic Industrial Cleaners, Port Hawksbury and other locations

38)  Since January 1, 2016, all records related to the purchase, maintenance, and use of oil dispersants, degreasers, and other cleaning chemicals used in the engine room and/or stored in the "SOPEP" locker of the M/V MARGUERITA.

39)  Any photographs, drawings, schematics, or other depictions of equipment, machinery, piping systems, layout, interior or exterior of the M/V MARGUERITA.

40)  All hoses, pipes, or other equipment used or allegedly used to discharge oily wastes overboard in violation of any environmental law, regulation, or standard, and all documents concerning such equipment, including photographs, descriptions, and records relating to the removal, disposal or destruction of such equipment.

41)  All documents concerning or evidencing efforts by REEDERI to monitor or enforce compliance with any policy regarding MARPOL and the disposal of oily wastes.

42)  Regardless of date, all documents reflecting any decision by REEDERI not to implement an environmental compliance measure concerning the MARPOL Protocol or a term of the Environmental Compliance Plan, including the handling and disposal of oil and oily waste, including the costs or anticipated costs of such measures, the reasons for not implementing such measures, the personnel involved in deciding not to implement such measures, and any cost-benefit analyses relating to the implementation or potential implementation of such measures.

43)  Such records as will show the identity of all supervisory shore personnel, including port captains, port engineers, and superintendents, with responsibilities relating to the M/V MARGUERITA, including name, job title, job description, place of employment, name of employer, and last known address.

2017R00205 - 004

AO 110 (Rev. 06/09) Subpoena to Testify Before a Grand Jury

# UNITED STATES DISTRICT COURT
### for the

District of Maine

## SUBPOENA TO TESTIFY BEFORE A GRAND JURY

To:  MST Mineralien Schiffahrt Spedition und Transport GmbH

**YOU ARE COMMANDED** to appear in this United States district court at the time, date, and place shown below to testify before the court's grand jury.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| | |
|---|---|
| Place:  Portland Grand Jury<br>Edward T. Gignoux Federal Courthouse, 156 Federal Street, Portland, ME 04101 | Date and Time:<br><br>August 8, 2017 |

You must also bring with you the following documents, electronically stored information, or objects *(blank if not applicable)*:
See Attachment

Date:  August 2, 2017

CLERK OF COURT

Christa K. Berry

*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the United States attorney, or assistant United States attorney, who requests this subpoena, are:

Shane Waller
100 Middle Street  East Tower, 6th Floor  Portland,  ME  04101
2077803257
shan.waller@usdoj.gov

2017R00205 - 004

AO 110  (Rev. 06/09)  Subpoena to Testify Before Grand Jury (Page 2)

## PROOF OF SERVICE

This subpoena for *(name of individual or organization)*  MST Mineralien Schiffahrt Spedition und Transport

was received by me on *(date)* _____ .

     ☐  I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

     ☐  I returned the subpoena unexecuted because: _____

_____ .

I declare under penalty of perjury that this information is true.

Date: _____

                                         _____

                                                              *Server's signature*

                                           _____

                                                              *Printed name and title*

                                           _____

                                                              *Server's address*

Additional information regarding attempted service, etc:

2017R00205 - 004

# CERTIFICATE OF AUTHENTICITY
# OF BUSINESS RECORDS
### (Pursuant to Federal Rules of Evidence 803(6) and 902(11))

I, _____, am employed by/associated with
  (Please print)

_____. My official title is _____.
  (organization)                                    (Please print)

By reason of my position I am familiar with how _____
                                                  (organization)

maintains records relating to its regularly conducted business activity, and I am authorized and

qualified to make this declaration.

I further certify that the attached records are originals or true copies of records which:

(A)    Were made at or near the time of the occurrence of the matters set forth in the records by a person with knowledge of those matters, or from information transmitted by a person with knowledge of those matters;

(B)    Were kept in the course of regularly conducted business activity;

(C)    Were made by the said business activity as a regular practice; and

(D)    If not original records, are duplicates of original records.

I declare under penalty of criminal punishment for perjury and false statement that the

foregoing is true and correct.

Executed on _____          _____
                Date                               Signature

                                          _____
                                               Printed Name

# ATTACHMENT A

For subpoena duces tecum dated August 2, 2017

I.  Instructions

This subpoena requires that you appear before the Grand Jury at the time and place specified and produce to the Grand Jury all documents described herein.

The documents required to be produced under this subpoena include all documents in the possession, custody or control of MST Mineralien Schiffahrt Spedition und Transport GmbH (MST), wherever located, including documents in the possession, custody or control of MST's directors, officers, employees, representatives or agents (which includes contractors, subcontractors, and consultants).  Without limitation on the term "control", a document is deemed to be in the "control" of MST, if you and/or any officer, director, employee or agent have the right to secure that document or a copy thereof from another.

All documents that respond, in whole or in part, to any part or clause or any paragraph of this subpoena shall be produced in their entirety, including all attachments and enclosures.  All documents that are attached to documents called for by this subpoena shall be produced, even if they are not otherwise responsive to the subpoena.

All documents produced shall be accompanied by an index listing the document by number, identifying the natural person and office location from which the document was obtained, and the paragraph of this subpoena to which each document is responsive.

Each page of all documents shall be numbered consecutively, beginning with 0000001 and continuing through the total number of pages submitted.  These markings should be placed at the lower right-hand corner of each page, but should not be placed so as to obscure any information on the document.

Any document demanded by the subpoena that is withheld on a claim of privilege must be preserved.  If the document contains privileged material, produce the entire document with the privileged material redacted.  For any document or any portion of a document withheld under a claim of privilege submit a sworn or certified statement from your counsel or one of your employees in which you identify the document by author(s), addressee(s), date, number of pages, current location, and subject matter.  Specify the nature and basis of the claimed privilege, and identify the paragraph of this subpoena to which the privileged document is responsive.  Also specify each person to whom the document or its contents, or any part thereof, has ever been disclosed.

No agreement by the Department of Justice or any of its representatives purporting to modify, limit, or otherwise vary this subpoena shall be valid or binding on the Department of Justice unless confirmed or acknowledged in writing (or made of record in court) by a duly authorized representative.

II. Definitions

As used herein, the term **"documents"** means and includes all form and manner of records and documents, including, but not limited to: contracts, agreements, letters, emails, daily logs, calendars, schedules, pamphlets, newsletters, flyers, inventory records, affidavits, statements, depositions, contracts, correspondence, memoranda, notes, purchase orders, log books, charts, tabulations, drawings, blueprints, wire diagrams, piping diagrams, compilations, studies, analyses, field tests, estimates, laboratory analyses, reports, vouchers, transfer records, shipping documents, packing lists, bills of lading, invoices, billing records, batch records, payment receipts, canceled checks, records of wire transfers and bank statements, quality assurance/quality control records, company brochures, manuals, vendor profiles, correspondence files, sales files and records, telefaxes, telephone logs and records, records or minutes of meetings, notes, messages, journals, process or procedure manuals, training records, manifests, inventories, tickets, lists, training manuals, operating instructions, workshop material, photographs, videos, voicemails, etc., as well as computer, email, and other electronic information, disks, data, etc.  Any electronically stored document is to be produced in reasonably usable form, along with instructions for reading the data.  The term "document" also includes the original (or a copy thereof if the original is not available) and all copies that differ in any respect from the original or that bear any notation, marking, or information not on the original.

As used herein, the terms "**relating to**" and "**regarding**" mean constitute, define, contain, embody, reflect, identify, state, refer to, deal with, or in any way pertain to.  As used herein, "**including**" is a term of inclusion that means including but not limited to; "including" is never a term that excludes items not specifically listed.

As used herein, the terms "**and**" and "**or**" are terms of inclusion and not of exclusion, and shall be construed either disjunctively or conjunctively as necessary to bring within the scope of this schedule any document or information that might otherwise be construed to be outside its scope.

The singular form of a noun or pronoun shall be considered to include within its meaning the plural form of the noun or pronoun, and vice versa.

As used herein, the term "**analysis**" means study, collection of data or information, examine, consider, contemplate, and/or literature review, whether complete, incomplete, or started but halted for any reason.

As used herein, the name M/V MARGUERITA shall at all times mean the vessel having IMO #9717515 to include such times as it was registered under a different vessel name.

III. Documents to be Produced

1)  Since January 1, 2016, any and all documents relating to engine room  and machinery space operations on the M/V MARGUERITA, including but not limited to: engine room logs; sounding logs; daily sounding reports; daily Fuel & Water Reports; engineering checklists; Oil Record Books; International Oil Pollution Prevention (IOPP) certificates and attachments; alarm print outs/electronic alarm logs; daily diaries; engineering logs; deck logs; rough logs; maintenance logs; preventative maintenance system reports; piping diagrams; daily work assignments; work completion and/or work done logs; engineer's notes and rough drafts of other engineering records created by crew members of the M/V MARGUERITA, and/or documents reflecting policies and procedures for conduct of operations in the engine room.

2)  Any and all documents relating to compliance with United States environmental laws (including the Act to Prevent Pollution from Ships and any Coast Guard regulations), or the MARPOL Protocol, including the discharge of bilge water, oily bilge waste, slops, sludge, garbage, or other pollutants.

3)  Since January 1, 2016, any and all documents relating to construction, repairs, modification and replacement for all engine room and machinery space piping, vents, tanks, and pumps.

4)  Any and all documents relating to an onboard waste-oil incinerator including when such incinerator was installed on the vessel and all documents containing information as to the maintenance and operation of the incinerator.

5)  Since January 1, 2016, all documents (including communications between the M/V MARGUERITA and/or its Engine Room crew members and/or master, and any shore-based personnel of MST) regarding the storage, treatment, handling, processing, and disposal of machinery space bilge water, sludge, and/or other oily wastes, on the M/V MARGUERITA, including but not limited to the use, operation, assessment, maintenance, and repair of the main engine, the Oil Water Separator, Oil Content Meter, and all records related to the M/V MARGUERITA discharging oily waste.

6)  Since January 1, 2016, all documents (including communications between the M/V MARGUERITA and/or its Engine Room crew members and/or master, and any shore-based personnel of MST) regarding the storage, treatment, handling, processing, and disposal of ballast water, ballast, grey water, sewage (black water), garbage and/or other wastes on the M/V MARGUERITA, including but not limited to the filling, transfer and discharge of any ballast tank, boiler fresh water tank, boiler feed water tank, any void tank or other tank or void space in which liquid was retained.

7)  Since January 1, 2016, all maintenance, upgrades, adjustments, replacement, and repair documents (including spare parts records) relating to the main engine, Oil Water Separator, Oil Content Monitor, and/or incinerator on the M/V MARGUERITA.  This

request includes but is not limited to all requisition forms, order forms, and invoices including documents related to the inventory and ordering of filters, membranes, cleaners and other consumable items necessary for the operation of the Oil Water Separator.

8)   Since January 1, 2016, all documents, including vendor, surveyor, flag state representative and classification society reports related to operational tests and/or examinations performed on the Oil Water Separator, Oil Content Meter, Oil Content Monitor or probes, and/or incinerator of the M/V MARGUERITA, by MST, or others. This information should include the calibration certificate(s) for the BilgMon 488 OCM including identification of the LCD unit assembly and measuring cell unit assembly.

9)   Since January 1, 2016, all documents relating to malfunctions, alarms or failures of the Oil Water Separator, Oil Content Monitor, and the pumps associated with the OWS system on the M/V MARGUERITA.

10)   Since January 1, 2016, all transition and turnover notes between Chief Engineers on the M/V MARGUERITA.

11)   Since January 1, 2016, all transition and turnover notes between vessel Masters on the M/V MARGUERITA.

12)   Since January 1, 2016, all transition and turnover notes of the First, Second, and Third Assistant Engineers on the M/V MARGUERITA.

13)   Since January 1, 2016, all vessel superintendent and port engineer trip reports and memoranda related to the M/V MARGUERITA.

14)   Since January 1, 2016, all audit reports, including Safety Management System and Classification Society audits, for the M/V MARGUERITA.

15)   For all Masters, Chief Mates, Chief Engineers and all crewmembers serving in the engine department of the M/V MARGUERITA since January 1, 2016, the personnel files, including documents relating to time served on the M/V MARGUERITA and related ships, contracts, pre-boarding documents, boarding documents, departure documents, termination records, performance evaluations, disciplinary actions, records relating to environmental and/or MARPOL training by the ship owner, operator, and/or any third party, and any certificates or licenses.

16)   Since January 1, 2016, all instructions, guidance, procedures, company policies, and training materials provided to the M/V MARGUERITA crew including the Masters and Chief Engineers regarding the maintenance of the Garbage Record, Oil Record Book, Sounding Log(s), daily sounding procedures, and compliance with United States environmental laws (including the Act to Prevent Pollution from Ships and any Coast Guard regulations), or the MARPOL Protocol, and the discharge of garbage, ballast water, bilge water, oily bilge waste, tank waste, slops, sludge, grey water, sewage, or other pollutants.

17) Since January 1, 2016, all documents relating to the disposal or discharge of waste oil (of any kind, including bilge water and sludge). The documents produced should include all records showing the date, time, location, volume, equipment used, type of hose connections used, costs of all waste oil removal, transfer, treatment, recycling, or disposal, and the identity and location of the employees, contractors or vendors providing this service.

18) Any and all documents related to any analysis of the Oil Content Meter/Monitor alarms from the M/V MARGUERITA from January 1, 2016, to the present.

19) With regard to the M/V MARGUERITA, any and all budget requests including all specific requests for expenditures by employees including the Chief Engineer, Master, port engineer or superintendent from January 1, 2016, to the present.

20) Any and all documents, including summaries or charts, relating to the gross and net profits, pre-tax profits, chartering fees, and expenses of the M/V MARGUERITA, from January 1, 2016, to the present.

21) Any and all documents, including summaries or charts, relating to the gross and net profits, and costs of MST, its subsidiaries, partnerships, and related corporate interests from January 1, 2016, to the present.

22) Any and all charter contracts or other contracts or agreements relating to the operation, management and oversight of the M/V MARGUERITA, from January 1, 2016, to the present including all documents concerning manning and crewing as well as the Charter Party contract(s) with Manuela Shipping ltd of Monrovia, Liberia.

23) Any and all documents identifying all owners of MST, including the percent of ownership, the names of all officers of MST, including the title and compensation of each, or, in lieu thereof, a duly authorized corporate statement providing this information.

24) Such documents as will show all other entities related to MST having any common ownership, any common officers, any common management, common address, and/or common personnel with MST, including the ownership of each such entity, or in lieu thereof, a duly authorized corporate statement providing this information.

25) All documents that identify those persons or businesses having an ownership interest or operating interest in the M/V MARGUERITA including the amount of that interest, or, in lieu thereof, a certified statement of a duly authorized corporate officer providing this information.

26) Such documents as will show all vessels owned (in whole or in part), operated, chartered or technically managed by MST.

27) Copies of all contracts and management agreements with or between MST, and owners, operators, charterers and technical managers of the M/V MARGUERITA including any agreements, contracts and correspondence between any manning or crewing agency and MST that govern, affect, or involve manning or crewing.

28) Certificate and Articles of Incorporation for MST.

29) Since January 1, 2016, the following budget related records:

    (a)    all documents relating to the budget for each vessel owned, operated or chartered by MST, including all proposed budgets and the final budget;

    (b)    all documents, including any periodic reports relating to the amount of money budgeted for the maintenance, storage, treatment and disposal of machinery space bilge water, sludge, and garbage on each vessel owned, operated or managed by MST; and

    (c)    all board resolutions and meeting minutes.

30) For the last two years, copies of all certificates of financial responsibility (COFR) and continuous synopsis records for the M/V MARGUERITA.

31) Copy of ISM certificate showing the company and designated person responsible for the M/V MARGUERITA.

32) Since January 1, 2016, all documents related to the building, builder's trial(s), sea trial(s), delivery, warranty repairs and any other repairs of the M/V MARGUERITA.

33) Since January 1, 2016, any and all reports made from crewmembers on the M/V MARGUERITA to MST (including communications to officers, management, helplines, and/or hotlines for concerns) and to safety or environmental compliance helplines and hotlines contracted or retained by MST regarding the management of machinery space bilge water, oily waste, ballast water, sludge, or garbage on the M/V MARGUERITA.

34) Since January 1, 2016, all documents related to environmental compliance plans, environmental compliance programs, and compliance reporting procedures, including confidential reporting options, third-party notifications, and whistleblower provisions, for all vessels owned, operated, managed, chartered, or otherwise under the control of MST.

35) Since January 1, 2016, all documents related to any Port State Control detention of any vessels owned, operated, managed, chartered or otherwise under the control of MST.

36) Since January 1, 2016, all documents related to the Vessel General Permit (VGP) application and approval for the M/V MARGUERITA including any documents involving the Environmental Protection Agency pertaining to ballast, ballast water, wastewater, and operational discharges, including all notifications and reports submitted in accordance with the VGP.

37) Since January 1, 2016, all documents, including orders, invoices, receipts, and correspondence, with any of the following companies:

   a) Coast Environmental Ltd, Victoria, BC, Canada
   b) Interport Shipwaste Solutions Inc., North Vancouver, BC, Canada
   c) Atlantic Industrial Cleaners, Port Hawksbury and other locations

38) Since January 1, 2016, all records related to the purchase, maintenance, and use of oil dispersants, degreasers, and other cleaning chemicals used in the engine room and/or stored in the "SOPEP" locker of the M/V MARGUERITA.

39) Any photographs, drawings, schematics, or other depictions of equipment, machinery, piping systems, layout, interior or exterior of the M/V MARGUERITA.

40) All hoses, pipes, or other equipment used or allegedly used to discharge oily wastes overboard in violation of any environmental law, regulation, or standard, and all documents concerning such equipment, including photographs, descriptions, and records relating to the removal, disposal or destruction of such equipment.

41) All documents concerning or evidencing efforts by MST to monitor or enforce compliance with any policy regarding MARPOL and the disposal of oily wastes.

42) Regardless of date, all documents reflecting any decision by MST not to implement an environmental compliance measure concerning the MARPOL Protocol or a term of the Environmental Compliance Plan, including the handling and disposal of oil and oily waste, including the costs or anticipated costs of such measures, the reasons for not implementing such measures, the personnel involved in deciding not to implement such measures, and any cost-benefit analyses relating to the implementation or potential implementation of such measures.

43) Such records as will show the identity of all supervisory shore personnel, including port captains, port engineers, and superintendents, with responsibilities relating to the M/V MARGUERITA, including name, job title, job description, place of employment, name of employer, and last known address.